UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT BERG**, individually and as Trustee of the **ALAN PAUL BERG TRUST**,<br>Plaintiff,<br>v.<br>**IAG ASSET MANAGEMENT CORPORATION**, a Florida Corporation;<br>**IAG MOBILITY AND ELECTRIFICATION FUND, L.P.**, a Delaware Limited Partnership; and<br>**P. KEVIN SMITH**, individually and as Chairman and Chief Executive Officer,<br>Defendants. | Civil Action No. ___________<br>**COMPLAINT** |

## INTRODUCTION

1. This is an action for securities fraud, unregistered sale of securities, investment adviser fraud, breach of contract, and common-law fraud arising from Defendants' fraudulent solicitation of a $50,000.00 limited partnership investment from Robert Berg, a lifelong resident of the District of Columbia, and their subsequent execution of a binding settlement agreement in which Defendants promised to pay Mr. Berg $70,000.00 — a payment that remains wholly unpaid more than nine months after it came due, with Defendants having deliberately cut off all communications with Plaintiff.

2. Defendants offered and sold a limited partnership interest in IAG Mobility and Electrification Fund, L.P. (the "Fund") to Mr. Berg without registering the offering with the U.S. Securities and Exchange Commission, without filing a Form D, without delivering any Private Placement Memorandum or equivalent disclosure document, and while concealing material conflicts of interest — including that Defendant P. Kevin Smith executed the governing agreement on both

sides of the same transaction and exercised total control over the Fund through a layered, opaque corporate structure designed to obscure accountability.

3. Defendants also failed to disclose that the Fund had created a related-party Affiliate Limited Partner entity under Section 14.5 of the Limited Partnership Agreement — an insider vehicle exempt from management fees and placement fees charged to outside investors like Plaintiff — a material conflict of interest that was never disclosed during the solicitation.

4. When Mr. Berg sought a return of his investment, Defendants executed a Share Purchase Release Agreement on or about July 31, 2025 (the "Release Agreement"), governed by the laws of Delaware, promising to pay Mr. Berg $70,000.00 USD at execution. That payment was never made. No explanation was given. Defendants went silent.

5. Plaintiff brings claims under: (i) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5; (ii) Section 12(a)(1) of the Securities Act of 1933 ("Securities Act") and Section 215 of the Investment Advisers Act of 1940 ("Advisers Act") for rescission of the unregistered offering; (iii) Section 215 of the Investment Advisers Act for restitutionary relief incident to the void advisory contract, including disgorgement of management fees, accounting, and injunction against continued operation of the void advisory relationship; (iv) Section 15 of the Securities Act and Section 20(a) of the Exchange Act for controlling-person liability against Defendant Smith; (v) Delaware law for breach of the Release Agreement and fraudulent inducement; (vi) the District of Columbia Securities Act of 2000, D.C. Code §§ 31-5603.01 and 31-5606.05, for the unregistered sale and securities fraud as the primary state securities claim; (vii) Florida Statutes Chapter 517 (Florida Securities and Investor Protection Act, "FSIPA") for the unregistered sale and securities fraud in the alternative; and (viii) common law unjust enrichment in the alternative.

6. Plaintiff seeks compensatory damages of no less than $70,000.00, rescission of his $50,000.00 investment, disgorgement of all fees and profits, attorneys' fees under FSIPA § 517.211(7), prejudgment interest, costs, and all other relief this Court deems just and proper. Punitive damages are sought solely on Plaintiff's state common law fraudulent inducement claim (Count 6). The District of Columbia Securities Act claim is pleaded as Count 7; the FSIPA claim is pleaded in the alternative as Count 8.

## PARTIES

7. **Plaintiff Robert Berg** is an individual residing in the District of Columbia, with a principal address of 6200 Oregon Avenue, NW, Washington, DC 20015. Mr. Berg also brings this action in his capacity as Trustee of the Alan Paul Berg Trust (the "Trust"), the beneficial owner of the limited partnership interest at issue and the party to whom the $70,000.00 payment obligation under the Release Agreement is owed. The Joinder Agreement and Release Agreement were both executed by Mr. Berg as Trustee on behalf of the Trust.

8. **Defendant IAG Asset Management Corporation** ("IAG" or the "General Partner") is a Florida corporation with its registered agent of record identified as P. Kevin Smith, 4737 N. Ocean Drive, Suite 213, Lauderdale-By-The-Sea, Florida 33308. IAG served as General Partner of the Fund, solicited Mr. Berg's investment, received his $50,000.00 capital contribution, executed the Release Agreement, and has failed to honor any of its contractual or statutory obligations to Plaintiff.

9. **Defendant IAG Mobility and Electrification Fund, L.P.** (the "Fund") is a limited partnership organized under the Delaware Revised Uniform Limited Partnership Act. The Limited Partnership Agreement identifies the Fund's principal office as 3420½ Brown Street,

NW (Unit B), Washington, DC 20010 — an address within this District. The Fund is the issuer of the limited partnership interests sold to Plaintiff and the entity in which Plaintiff's capital was invested.

10. **Defendant P. Kevin Smith** (also known as Phillip Kevin Smith) is an individual who, on information and belief, resides in Florida. He is the Chairman and Chief Executive Officer of IAG Asset Management Corporation and controls the Fund through Invictus Advisory Group, LLC, a Delaware limited liability company that holds a "super-voting control position" in IAG. The Limited Partnership Agreement discloses in bold capital letters that "IAG IS CONTROLLED BY P. KEVIN SMITH." Smith is expressly identified in Section 14.18 of the Limited Partnership Agreement as the "Managing Partner" — the individual whose acts and omissions directly constitute the conduct of the General Partner.

11. Smith personally executed the Release Agreement on behalf of Defendants, personally directed the solicitation of Mr. Berg's investment, and is the primary architect of the fraudulent scheme described herein. Smith is sued in his individual capacity, as a controlling person under Section 15 of the Securities Act and Section 20(a) of the Exchange Act, and as personal guarantor of the General Partner's obligations under Section 10.5(b) of the Limited Partnership Agreement.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over Plaintiff's Exchange Act claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa, which grants federal courts exclusive jurisdiction over actions to enforce liabilities and duties created by the Exchange Act. The Court has subject-matter jurisdiction over Plaintiff's Securities Act claims pursuant to 15 U.S.C. § 77v. The Court has subject-matter jurisdiction over Plaintiff's Investment Advisers Act claims pursuant

to 15 U.S.C. § 80b-14. The Court has supplemental jurisdiction over Plaintiff's D.C. Securities Act, Florida FSIPA, and common law claims pursuant to 28 U.S.C. § 1367(a), as they all form part of the same case or controversy as the federal claims. The state law claims present choice of law questions — not jurisdictional ones — that the Court is fully competent to resolve under applicable conflict of laws principles.

13. Venue is proper in this District pursuant to 15 U.S.C. § 78aa, which authorizes suit in any district "wherein any act or transaction constituting the violation occurred" or "wherein the defendant is found or is an inhabitant or transacts business." The following acts occurred in this District: (a) Defendants solicited Plaintiff's $50,000.00 investment while Plaintiff was a resident of the District of Columbia; (b) Plaintiff executed the Limited Partnership Agreement and Joinder Agreement, and remitted his $50,000.00 check, from within this District; (c) Plaintiff executed the Release Agreement in this District; (d) the Fund identifies a Washington, DC address as its principal office; and (e) Defendants' ongoing failure to pay and their deliberate cessation of communications have caused continuing harm to Plaintiff in this District. Venue is independently proper under 28 U.S.C. § 1391(b)(2).

14. This Court has personal jurisdiction over the entity Defendants. Each purposefully directed conduct toward a District of Columbia resident, transacted business relating to the offer and sale of securities in this District, identified a D.C. address as the Fund's principal office, and executed binding contractual obligations with a D.C. resident.

15. This Court has personal jurisdiction over Defendant Smith individually. Smith purposefully directed the solicitation of Plaintiff's investment to a known District of Columbia resident, personally communicated with Plaintiff in this District, executed the Release Agreement with a D.C. resident, and caused tortious injury in this District through his fraud and subsequent

silence. The exercise of personal jurisdiction over each Defendant comports with due process under International Shoe Co. v. Washington, 326 U.S. 310 (1945), and its progeny.

## FACTUAL ALLEGATIONS

### A. The Fund, the Offering, and the Control Structure

16. On or about July 30, 2024, Defendant IAG Asset Management Corporation, as General Partner, formed IAG Mobility and Electrification Fund, L.P. by executing the Limited Partnership Agreement. The Fund was marketed as a vehicle for investing in electric vehicle, battery, and clean energy technology companies, with a stated goal of providing investors with "long-term capital appreciation."

17. The Limited Partnership Agreement (a true and correct copy of which is annexed hereto as Exhibit A) discloses on its face, in bold capital letters on the cover page: "INVICTUS ADVISORY GROUP, LLC, A DELAWARE LLC, WHICH OWNS A SUPER-VOTING CONTROL POSITION IN IAG ASSET MANAGEMENT CORPORATION, THE GP. IAG IS CONTROLLED BY P. KEVIN SMITH, WHO IS ALSO CHAIRMAN AND CEO OF IAG ASSET MANAGEMENT CORPORATION." Defendant Smith thus controls the Fund, the General Partner, and the super-voting control entity through a deliberately opaque three-tier structure. Section 14.18 of the LPA further identifies Smith as the "Managing Partner" — the individual solely responsible for the conduct of the General Partner at all times.

18. Plaintiff invested money in the Fund, a common enterprise managed and controlled entirely by IAG and Defendant Smith, with any returns to depend solely on the managerial and investment efforts of the General Partner and its control persons. Plaintiff had no role in the management,

operation, or investment decisions of the Fund and exercised no control over the deployment of his capital.

19. The Limited Partnership Agreement itself acknowledges, in a securities legend, that the interests "HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933." On information and belief, no registration statement covering this offering has ever been filed with the SEC. A search of the SEC's EDGAR database reveals no Form D filing for IAG Asset Management Corporation, IAG Mobility and Electrification Fund, L.P., or any related entity in connection with this offering. Under Regulation D, an issuer must file Form D within fifteen days of the first sale of securities; IAG's failure to file constitutes direct, documentary evidence that no valid Regulation D exemption was perfected.

20. The Limited Partnership Agreement charged investors a 2.0% per-annum management fee on gross capital contributions, payable quarterly in advance, and reserved a 20% incentive allocation on liquidated assets after a "Benchmark Preferred Return." These fee arrangements, coupled with IAG's discretionary authority to manage pooled investor capital for compensation, bring IAG Asset Management Corporation within the definition of an "investment adviser" under Section 202(a)(11) of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-2(a)(11).

21. On information and belief, IAG has never registered as an investment adviser with the SEC, has not filed a Form ADV, and has not validly claimed any exemption from registration. The consequences of that failure are addressed in the Causes of Action below, including Plaintiff's claim for rescission of the Limited Partnership Agreement as a contract void under Section 215 of the Advisers Act, 15 U.S.C. § 80b-15.

22. Defendants also failed to disclose the existence of the "Affiliate Limited Partner" created under Section 14.5 of the Limited Partnership Agreement — a related-party insider vehicle expressly exempt from the management fees and placement fees charged to outside investors. Plaintiff was never informed that this insider entity would participate in the same Fund on preferential terms. This undisclosed conflict of interest constitutes a material omission under Section 10(b) and Rule 10b-5, and an independent violation of Section 206 of the Investment Advisers Act.

## B. Plaintiff's Investment and Defendants' Material Misrepresentations and Omissions

23. In or about September 2024, Defendant Smith personally solicited Mr. Berg's investment in the Fund through direct oral and written communications directed to Mr. Berg at his residence in the District of Columbia. Smith made the following specific material misrepresentations to Mr. Berg in the course of that solicitation.

24. Smith represented that the Fund was an established and legitimately organized investment vehicle operating in compliance with applicable securities laws. This representation was false. The Fund's offering was entirely unregistered under the Securities Act of 1933, no Form D had been filed with the SEC, and no valid Regulation D exemption had been perfected. The Fund had no legitimate compliance infrastructure whatsoever.

25. Smith represented that he and IAG possessed the professional expertise, operational infrastructure, and investment track record necessary to manage and prudently deploy investor capital in the electric vehicle, battery technology, and clean energy sectors. This representation was false and misleading. On information and belief, Defendants had no verifiable track record of managing pooled investment capital, had not engaged any independent investment

professionals or advisers, and had implemented no compliance, reporting, or governance framework of any kind.

26. Smith represented that the investment offered the prospect of significant long-term capital appreciation commensurate with the risks of a private placement in the clean energy sector, and implicitly represented that Plaintiff's capital would be actively deployed in pursuit of that objective. These representations were false and misleading. On information and belief, Plaintiff's $50,000.00 was never invested in any identified portfolio company, was never accounted for, and Plaintiff received no capital account statement, distribution, or any communication confirming the deployment or status of his funds at any time following investment.

27. Smith represented, expressly or by necessary implication, that the offering was being made in compliance with applicable investor protection requirements, including accredited investor verification. No such verification was performed.

28. On or about September 20, 2024, Plaintiff invested $50,000.00 in the Fund by executing a Joinder Agreement (a true and correct copy of which is annexed hereto as Exhibit B) and the Limited Partnership Agreement and tendering a check in the amount of $50,000.00, payable to the Fund. At no time prior to or after Plaintiff's investment did Defendants deliver any Private Placement Memorandum, offering circular, subscription agreement, accredited-investor verification, audited financial statements, or any equivalent disclosure document.

29. In addition to the foregoing affirmative misrepresentations, Defendants failed to disclose the following material facts, each of which a reasonable investor in Plaintiff's position would have considered important in deciding whether to invest.

30. Defendants failed to disclose that the offering had not been registered with the SEC and that no valid exemption from registration under Regulation D or otherwise had been perfected.

31. Defendants failed to disclose the nature, extent, and financial consequences of Smith's conflicts of interest, including that Smith executed the Limited Partnership Agreement on both sides of the same transaction — as General Partner on behalf of IAG and, on information and belief, also as or on behalf of a Limited Partner — without disclosure or independent representation for Plaintiff.

32. Defendants failed to disclose that IAG was operating as an unregistered investment adviser in violation of the Investment Advisers Act of 1940, that no Form ADV had been filed with the SEC, and that no valid exemption from registration had been claimed.

33. Defendants failed to disclose that the Joinder Agreement had been predated to July 31, 2024 and that its execution date had been manually altered without disclosure to or consent from Plaintiff.

34. Defendants failed to disclose that the Fund had no audited financial statements, no independent oversight, no third-party administrator, and no mechanism by which investors could independently verify the status or deployment of their invested capital.

35. Defendants failed to disclose the existence and preferential treatment of the Affiliate Limited Partner under Section 14.5 of the LPA — an insider entity exempt from the management fees and placement fees charged to outside investors — a material conflict of interest that a reasonable investor would consider important in evaluating the fairness and integrity of the Fund's structure.

36. The Joinder Agreement bears an original date of July 31, 2024, which was manually struck through and overwritten by hand to reflect a date of September 20, 2024. This material alteration of a key transaction document — without any explanation, disclosure, or Plaintiff's prior knowledge — is indicative of backdating, irregular capital-call practices, and a broader pattern of deceptive conduct.

37. Defendant Smith executed the Limited Partnership Agreement as General Partner on behalf of IAG Asset Management Corporation and, on information and belief, also as or on behalf of a Limited Partner — signing the same agreement on both sides of the transaction. This undisclosed self-dealing constituted a material omission that a reasonable investor would consider important in deciding whether to invest.

38. Following Plaintiff's investment, Defendants provided no capital account statements, no audited financial statements, no accounting of how Plaintiff's $50,000.00 was deployed, no distributions, and no communications concerning the Fund's performance, investments, or financial condition. Plaintiff received nothing of value in exchange for his $50,000.00 capital contribution. The LPA required quarterly reports within 45 days after the close of each quarter and audited annual financial statements within 90 days after fiscal year end. Defendants failed to deliver any such reports or statements at any time.

## C. The Share Purchase Release Agreement and Defendants' Default

39. After Plaintiff made repeated demands for return of his investment and repeatedly attempted to obtain any accounting or information from Defendants, Defendants and Plaintiff negotiated and fully executed the Release Agreement dated July 31, 2025. The Release Agreement was

signed by Defendant Smith as "Chairman/CEO" on behalf of IAG, and by Plaintiff Robert Berg as Trustee of the Alan Paul Berg Trust.

40. The Release Agreement (a true and correct copy of which is annexed hereto as Exhibit C) is governed by the laws of the State of Delaware. Section 1.3 expressly provides: "The Seller hereby agrees to pay the Buy[er] a sum of seventy thousand dollars ($70,000.00 USD) as an acknowledgement at execution of this agreement by the Parties." The $70,000.00 payment was thus due on July 31, 2025 — the date of execution.

41. The Release Agreement recites that on September 17, 2024, the Seller sold $50,000.00 worth of shares to the Buyer. That date — September 17, 2024 — differs from the September 20, 2024 execution date reflected in the manually altered Joinder Agreement. This internal inconsistency in Defendants' own documentation is a further indicia of the irregular and deceptive practices described herein.

42. The Release Agreement contains a further structural ambiguity: the Recitals identify the Seller as IAG Asset Management Corporation acting together with the Limited Partners forming IAG Mobility and Electrification Fund, L.P., while the signature block reflects execution by P. Kevin Smith as "Chairman/CEO" on behalf of "IAG Mobility and Electrification Fund, L.P." — two legally distinct entities. This deliberate blurring of the obligor's identity is consistent with a pattern of conduct designed to obscure which entity bears legal responsibility, thereby impeding Plaintiff's ability to enforce his rights. Both IAG Asset Management Corporation and IAG Mobility and Electrification Fund, L.P. are liable for the $70,000.00 payment obligation under alter ego and agency theories.

43. Defendants have paid no portion of the $70,000.00 due under Section 1.3 of the Release Agreement. As of the filing of this Complaint, the payment is more than nine months overdue.

44. Immediately following execution of the Release Agreement, Defendant Smith and IAG ceased all communications with Plaintiff. Plaintiff's repeated attempts to contact Defendants by all available means — including direct phone and email contact — have been wholly ignored. This deliberate cessation of communications following a broken payment commitment is consistent with fraudulent intent and bad faith and evidences a pre-formed intent not to honor the $70,000.00 obligation at the time of execution.

45. On or about May 14, 2026, Plaintiff, through counsel, transmitted a formal written demand to Defendants at both their Washington, D.C. address and their Lauderdale-By-The-Sea, Florida address, demanding immediate payment of the $70,000.00 due and owing under Section 1.3 of the Release Agreement (the "Demand Letter," a true and correct copy of which is annexed hereto as Exhibit D). Defendants were given ten (10) days to respond, with a response deadline of May 24, 2026.

46. On May 14, 2026, Plaintiff's counsel also transmitted a follow-up clarification letter (a true and correct copy of which is annexed hereto as Exhibit E) to Defendants confirming that the ten-day response period ran from May 14, 2026, with a deadline of May 24, 2026. Defendants failed to respond to either the Demand Letter or the clarification letter by the May 24, 2026 deadline, or at all. This failure to respond to formal written counsel demand, coming after more than nine months of complete silence following the broken payment obligation, further evidences Defendants' bad faith and willful refusal to honor their obligations to Plaintiff.

## BASIS FOR INJUNCTIVE RELIEF

47. On information and belief, Defendants have no legitimate ongoing business operations, have collected management fees and investor capital without deploying them for any lawful investment purpose, and have deliberately ceased all communications with Plaintiff and, on information and belief, with other investors following the execution of the Release Agreement. Defendants' pattern of conduct — including the structurally defective and unregistered offering, the manual alteration of transaction documents, the execution of the Release Agreement with no intention to perform, and the total cessation of communications — is consistent with an intent to frustrate enforcement of any judgment. There is a material and imminent risk that Defendants will dissipate, conceal, transfer, or otherwise place assets beyond the reach of Plaintiff and this Court.

48. Plaintiff has no adequate remedy at law with respect to this risk. Plaintiff therefore requests that this Court enter a prejudgment asset freeze and order of injunctive relief pursuant to Rule 64 of the Federal Rules of Civil Procedure and the Court's inherent equitable power to preserve assets in aid of a judgment, restraining Defendants from dissipating, concealing, or transferring assets pending resolution of this action.

## CAUSES OF ACTION

### COUNT 1

***Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 (Against All Defendants)***

49. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

50. Defendants, and each of them, directly or indirectly, by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase and sale of securities

— specifically, limited partnership interests in the Fund — employed devices, schemes, and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices, and courses of business which operated as a fraud and deceit upon Plaintiff, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

51. The material misrepresentations and omissions actionable under Section 10(b) and Rule 10b-5 include, without limitation, those set forth in paragraphs 24 through 38 above, including Smith's false representations concerning the Fund's regulatory compliance, his expertise and track record, the deployment of Plaintiff's capital, and the concealment of the Affiliate Limited Partner's preferential fee structure, the manual alteration of the Joinder Agreement, and Smith's self-dealing dual role in executing the Limited Partnership Agreement.

52. Each Defendant acted with scienter — that is, with intent to deceive, manipulate, or defraud, or at minimum with severe recklessness as to the truth — giving rise to a strong inference of fraudulent intent within the meaning of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2). Smith personally orchestrated the solicitation, personally executed the governing documents on both sides of the transaction, personally signed the Release Agreement while having no intention to satisfy the payment obligation, and then personally directed all communications to cease. The entity Defendants acted through Smith, their sole controlling mind, in a manner consistent only with an intentional or severely reckless disregard for Plaintiff's rights.

53. Plaintiff justifiably relied on Defendants' misrepresentations and omissions. Because this action is based primarily upon Defendants' omissions of material fact, reliance is presumed

under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972). To the extent direct reliance is required, Plaintiff avers that he would not have invested $50,000.00 in the Fund had he been told the truth.

54. As a direct and proximate result of Defendants' violations of Section 10(b) and Rule 10b-5, Plaintiff has suffered damages in an amount to be proven at trial. The measure of recovery under Section 10(b) is Plaintiff's out-of-pocket loss — the difference between the $50,000.00 Plaintiff paid and the actual value of the LP interest he received, which, given that no portfolio investments were made and Plaintiff received nothing of value, was at or near zero at the time of the transaction. Plaintiff's Section 10(b) damages are therefore approximately $50,000.00, plus prejudgment interest from September 20, 2024, attorneys' fees, and costs. The foregoing loss was directly and proximately caused by Defendants' material misrepresentations and omissions: had Defendants disclosed the unregistered status of the offering, the absence of any valid Regulation D exemption, the undisclosed conflicts of interest, and the true state of the Fund's operations, Plaintiff would not have made the investment and would not have suffered the loss. See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342 (2005).

## COUNT 2

### *Rescission Under Section 12(a)(1) of the Securities Act and Section 215 of the Investment Advisers Act (Against All Defendants)*

55. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

56. Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), imposes strict liability on any person who offers or sells a security in violation of Section 5 of the Securities Act, 15 U.S.C.

§ 77e. Defendants offered and sold limited partnership interests in the Fund to Plaintiff without a registration statement in effect and without perfecting any valid exemption from registration. IAG Asset Management Corporation and the Fund are the issuers and sellers of the unregistered interests. Defendant Smith is also a statutory seller within the meaning of Section 12(a)(1) because he personally and directly solicited Plaintiff's purchase for his own financial benefit. See *Pinter v. Dahl*, 486 U.S. 622 (1988).

57. Plaintiff is entitled to rescind his purchase of the limited partnership interests on two independent grounds. First, under Section 12(a)(1), Plaintiff may recover the $50,000.00 consideration paid, together with interest thereon, less any income received, upon tender of the security. Plaintiff hereby tenders and stands ready, willing, and able to tender his limited partnership interest in the Fund to Defendants upon entry of a judgment of rescission. Second, under Section 215 of the Investment Advisers Act, 15 U.S.C. § 80b-15, the Limited Partnership Agreement is void as a contract made in violation of the Advisers Act by an unregistered investment adviser. Plaintiff is entitled to rescind that contract and recover the $50,000.00 paid thereunder, with interest. See *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979). These grounds are cumulative and Plaintiff need not elect between them at the pleading stage.

**COUNT 3**

***Void Contract and Restitutionary Relief Under Section 215 of the Investment Advisers Act***

***(Against IAG Asset Management Corporation and P. Kevin Smith)***

58. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

59. Section 206 of the Investment Advisers Act, 15 U.S.C. § 80b-6, makes it unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly: (1) to employ any device, scheme, or artifice to defraud any client or prospective client; (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; or (3) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative.

60. IAG Asset Management Corporation and Defendant Smith, as unregistered investment advisers who received management fees and incentive allocations for managing investor capital, owed a fiduciary duty to Plaintiff as a client or prospective client. Defendants violated Section 206 by: (a) soliciting Plaintiff's investment without disclosing that IAG was unregistered; (b) collecting management fees without deploying any capital for investment purposes; (c) failing to disclose the Affiliate Limited Partner's preferential fee structure; (d) failing to provide any client reporting, account statements, or disclosures; and (e) executing the Release Agreement with no intention to perform, thereby defrauding Plaintiff of his right to pursue underlying claims.

61. Section 215 of the Investment Advisers Act, 15 U.S.C. § 80b-15, voids contracts made in violation of the Act and confers a limited private remedy for rescission, restitution, and injunctive relief against continued operation of the void contract. See *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18–19 (1979). Plaintiff seeks the following equitable relief: (a) disgorgement of all management fees, incentive allocations, and any other compensation received by IAG and Smith in connection with managing Plaintiff's investment, plus prejudgment interest thereon; (b) a permanent injunction against IAG and Smith from acting as investment advisers, soliciting investors, or managing investor capital without

registration with the SEC or a valid exemption; and (c) an accounting of all revenues, fees, and profits earned by IAG and Smith in connection with managing Plaintiff's investment.

## COUNT 4

### *Controlling Person Liability — Section 15 of the Securities Act and Section 20(a) of the Exchange Act (Against Defendant P. Kevin Smith)*

62. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

63. At all relevant times, Defendant P. Kevin Smith was a controlling person of IAG Asset Management Corporation and IAG Mobility and Electrification Fund, L.P. within the meaning of Section 15 of the Securities Act, 15 U.S.C. § 77o, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). The Limited Partnership Agreement expressly states, in bold, that "IAG IS CONTROLLED BY P. KEVIN SMITH." Smith held a super-voting control position over IAG through Invictus Advisory Group, LLC, served as Chairman and CEO, was the sole Managing Partner under Section 14.18, and personally directed all aspects of the offering and the post-execution conduct described herein.

64. Smith directly participated in, and was a culpable participant in, the primary violations alleged in Counts 1 and 2 above. Smith cannot establish a good-faith defense to controlling person liability because he personally designed and executed the fraudulent scheme, personally solicited Plaintiff's investment, personally executed transaction documents on both sides of the deal, personally signed the Release Agreement, and personally directed the cessation of all communications with Plaintiff after breaching it. Smith is therefore jointly and severally liable with IAG and the Fund for all damages suffered by Plaintiff arising from those violations.

## COUNT 5

### *Breach of Contract — Share Purchase Release Agreement (Against IAG Asset Management Corporation, IAG Mobility and Electrification Fund, L.P., and P. Kevin Smith) (Delaware Law)*

65. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

66. The Release Agreement is a valid, binding, and enforceable contract governed by the laws of the State of Delaware. The Release Agreement was fully executed by both Plaintiff and Defendant Smith on behalf of Defendants on or about July 31, 2025.

67. Section 1.3 of the Release Agreement imposes on Defendants an express, unconditional obligation to pay Plaintiff $70,000.00 USD at execution of the Agreement. This obligation was due on July 31, 2025. Both IAG Asset Management Corporation and IAG Mobility and Electrification Fund, L.P. are jointly and severally liable for this obligation, notwithstanding the ambiguity between the Recitals and the signature block, under alter ego and agency theories. Smith is personally liable under Section 10.5(b) of the LPA as personal guarantor of the General Partner's obligations and under general principles of controlling person liability.

68. Plaintiff fully performed all of his obligations under the Release Agreement, including executing the mutual releases provided in Sections 1.1 and 1.2. To the extent Defendants argue that those mutual releases bar Plaintiff's federal securities law claims, Plaintiff avers that (a) any such release is void or voidable as the product of fraudulent inducement, as alleged in Count 6; (b) releases of unwaivable federal securities law claims are void as against public

policy; and (c) Defendants' total failure to perform their own obligations under the Release Agreement excuses any release obligations Plaintiff may have undertaken.

69. Defendants have materially breached the Release Agreement by failing to pay any portion of the $70,000.00 due to Plaintiff. This breach is total and continuing.

70. As a direct and proximate result of Defendants' breach of the Release Agreement, Plaintiff has suffered damages of $70,000.00, together with pre- and post-judgment interest at the applicable rate, attorneys' fees and costs to the extent permitted by law or equity, and all other consequential damages.

## COUNT 6

***Fraudulent Inducement (Against All Defendants) (Delaware and District of Columbia Law)***

71. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

72. Defendants made material false representations to Plaintiff in connection with the solicitation of his $50,000.00 investment, including representations about the legitimacy of the offering, the experience and qualifications of the General Partner, the use of investor funds, and the regulatory compliance of the Fund. Defendants omitted material facts as described above. These misrepresentations and omissions were made knowingly or with reckless disregard for their falsity. Plaintiff justifiably relied on them in tendering his $50,000.00 investment.

73. Independently, Defendants made material false representations in connection with the Release Agreement. On information and belief, at the time Defendants executed the Release Agreement and promised to pay $70,000.00, Defendants had no intention of making that payment and lacked the good-faith intent to perform. Defendants' immediate and complete cessation of all

communications upon execution — having secured the mutual release of claims from Plaintiff — is strong circumstantial evidence of fraudulent intent at the time of contracting. By executing the Release Agreement without any intention to pay, Defendants fraudulently induced Plaintiff to release existing legal claims in exchange for a worthless promise.

74. Plaintiff justifiably relied on Defendants' misrepresentations in investing $50,000.00 in the Fund and in executing the Release Agreement, to his detriment.

75. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff has suffered damages in an amount to be proven at trial. Because Defendants' conduct was intentional, willful, wanton, and in conscious disregard of Plaintiff's rights, Plaintiff is entitled to an award of punitive damages on this Count alone, pursuant to applicable Delaware and District of Columbia common law.

**COUNT 7**

***Violation of the District of Columbia Securities Act of 2000, D.C. Code §§ 31-5603.01 and 31-5606.05 (Against All Defendants) (In the Alternative, or as Primary State Securities Claim)***

76. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein. This Count is pleaded in the alternative to Count 8 (FSIPA), or as the primary state securities claim, depending upon the choice of law applicable to the facts of this action. Plaintiff is a lifelong resident of the District of Columbia who was solicited in the District, invested in the District, and was harmed in the District. The District of Columbia has the most significant relationship to this transaction and to the parties' dispute under applicable conflict of laws principles.

77. The District of Columbia Securities Act of 2000, D.C. Code § 31-5603.01, provides that no person shall offer or sell a security in the District of Columbia unless the security is registered under the Act, the security or transaction is exempt under D.C. Code §§ 31-5604.01 or 31-5604.02, or the security is a federal covered security. The limited partnership interests in the Fund are "securities" within the meaning of the D.C. Securities Act. Defendants offered and sold those interests to Plaintiff — a D.C. resident solicited at his D.C. residence — without registering the offering under the Act, without any applicable exemption, and without the interests constituting federal covered securities. Defendants thereby violated D.C. Code § 31-5603.01 in connection with the offer and sale of securities in the District of Columbia.

78. Defendants are civilly liable to Plaintiff under D.C. Code § 31-5606.05(a)(1). Each Defendant who offered or sold the unregistered limited partnership interests to Plaintiff is jointly and severally liable to Plaintiff for rescission of his $50,000.00 investment — or for damages in an amount to be proven at trial if Plaintiff has disposed of the security — together with interest at the rate used in the Superior Court of the District of Columbia from the date of payment, less the amount of any income received on the security, plus costs and reasonable attorneys' fees. Plaintiff tenders and stands ready, willing, and able to tender his limited partnership interest in the Fund to Defendants upon entry of a judgment of rescission.

79. Defendants are independently liable to Plaintiff under D.C. Code § 31-5606.05(a)(2) for purchasing — or causing Plaintiff to purchase — securities by means of untrue statements of material fact and omissions to state material facts necessary to make the statements made not misleading, as described in paragraphs 24 through 38 above, which Plaintiff did not know and in the exercise of reasonable care could not have known. Defendants are jointly and severally liable in an action for rescission of the $50,000.00 investment, or for damages if Plaintiff has

disposed of the security, together with interest at the applicable District of Columbia rate from the date of payment, plus costs and reasonable attorneys' fees.

80. Defendant Smith is jointly and severally liable as a controlling person of IAG Asset Management Corporation and the Fund within the meaning of D.C. Code § 31-5606.05(e), which provides that every person who directly or indirectly controls a seller or buyer liable under this section, and every partner, officer, or director of such person, is jointly and severally liable unless such controlling person sustains the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. Smith cannot sustain that burden: he personally orchestrated every element of the transaction as the sole managing mind of IAG and the Fund.

81. Pursuant to D.C. Code § 31-5606.05(j), the rights and remedies provided by this Count are in addition to any other rights or remedies available at law or in equity, including those asserted in Counts 1 through 6 above. All remedies under this Count are pleaded in the alternative to Count 8 (FSIPA) and are cumulative with Plaintiff's federal claims; Plaintiff defers any election of remedies until after the liability phase of this proceeding.

**COUNT 8**

***Violation of Florida Securities and Investor Protection Act (FSIPA), Florida Statutes Chapter 517 (Against All Defendants) (In the Alternative)***

82. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

83. Florida law governs the substantive rights and obligations of the parties under the Limited Partnership Agreement pursuant to Section 15.1 of the LPA, which provides: "This Agreement

shall be governed by and construed under the laws of the State of Florida." This Court has supplemental jurisdiction over Plaintiff's Florida FSIPA claims pursuant to 28 U.S.C. § 1367(a) as they arise from the same transaction and occurrence as Plaintiff's federal claims.

84. The limited partnership interests sold to Plaintiff are "securities" within the meaning of Florida Statutes § 517.021. The offer and sale of those interests constitutes a violation of Florida Statutes § 517.07, which makes it unlawful to offer or sell an unregistered security "within this state." Florida courts have construed § 517.07 to apply to offers that originate within Florida, regardless of where the offeree receives them. See *Gustafson v. State*, 480 So. 2d 576 (Fla. Dist. Ct. App. 1985).

85. The offer of LP interests to Plaintiff originated in Florida within the meaning of Florida Statutes § 517.07. Section 517.021 defines "offer" as "any attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, or an investment or interest in an investment, for value." Smith, a Florida resident, and IAG Asset Management Corporation, a Florida corporation with offices in Lauderdale-By-The-Sea, conducted that solicitation from Florida. The fact that it was received by Plaintiff in the District of Columbia does not remove the offer from the reach of Florida's securities laws. IAG, the Fund, and Smith failed to register the securities or qualify for any applicable exemption.

86. Defendants employed devices, schemes, and artifices to defraud Plaintiff in connection with the offer and sale of securities, and made untrue statements of material fact and omissions of material fact, in violation of Florida Statutes § 517.301. The material misrepresentations and omissions are as set forth in paragraphs 24 through 38 above.

87. Defendant Smith personally participated in and aided the sale of the unregistered securities to Plaintiff within the meaning of Florida Statutes § 517.211, including by personally soliciting Plaintiff's investment, personally executing the transaction documents, and personally receiving management fees and other compensation in connection with the offering. Smith is therefore jointly and severally liable for the full amount of Plaintiff's damages under § 517.211.

88. Pursuant to Florida Statutes § 517.211(7), upon prevailing on his FSIPA claims the Court shall award Plaintiff reasonable attorneys' fees and costs unless the Court finds that such an award would be unjust. This fee-shifting provision applies regardless of the amount recovered and constitutes an independent basis for the Court's award of attorneys' fees in addition to any other fee-shifting provisions applicable to Plaintiff's claims.

89. Plaintiff is entitled to rescission of his $50,000.00 investment and recovery of the consideration paid, together with interest thereon from the date of the violation (September 20, 2024), costs, and mandatory attorneys' fees pursuant to Florida Statutes §§ 517.211 and 517.241. All remedies available under Florida Statutes § 517.241(3) are cumulative and are pleaded in the alternative to Plaintiff's federal claims; Plaintiff defers any election of remedies until after the liability phase of this proceeding.

**COUNT 9**

***Unjust Enrichment (Against All Defendants) (In the Alternative)***

90. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if fully set forth herein.

91. Plaintiff conferred a direct benefit on Defendants in the amount of $50,000.00 by investing that sum in the Fund. Defendants received, accepted, and retained Plaintiff's $50,000.00 without providing any value in return — no investment returns, no distributions, no accounting, and no repayment.

92. It would be inequitable and unconscionable for Defendants to retain Plaintiff's $50,000.00 without compensation. Plaintiff is entitled to recover this amount, together with interest and any profits or fees that Defendants derived from the use of Plaintiff's funds, to the extent that any other remedy is unavailable or inadequate. This claim is pleaded in the alternative to Count 5 (Breach of Contract) and survives to the extent that the Release Agreement or the Limited Partnership Agreement is found void, voidable, or otherwise unenforceable, including as a result of the fraudulent inducement alleged in Count 6 or the statutory voidability alleged in Count 2. All remedies under this Count are cumulative with those sought in Counts 7 and 8.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Berg, individually and as Trustee of the Alan Paul Berg Trust, respectfully prays that this Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

**A.** Compensatory damages of $70,000.00 for Defendants' breach of the Release Agreement, plus prejudgment interest from July 31, 2025 at the maximum rate permitted by applicable law, plus any consequential damages flowing from the breach;

**B.** In the alternative, rescission of Plaintiff's $50,000.00 investment in the Fund pursuant to Section 12(a)(1) of the Securities Act, Section 215 of the Investment Advisers Act, and Florida Statutes §§ 517.211 and 517.241, and recovery of the $50,000.00 consideration paid

thereunder, together with interest thereon from the date of the violation (September 20, 2024), less any income received, upon tender of the security;

C. In the further alternative, compensatory damages for Defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5, in an amount no less than $50,000.00 and otherwise to be proven at trial;

D. Disgorgement of all management fees, incentive allocations, and other ill-gotten gains obtained by Defendants from Plaintiff and from other investors as a result of the fraudulent scheme, plus prejudgment interest thereon, pursuant to Counts 1, 3, and 7;

E. Restitutionary relief incident to rescission under Section 215 of the Investment Advisers Act, 15 U.S.C. § 80b-15, including: (i) restitution of all management fees, incentive allocations, and other compensation received by IAG and Smith from Plaintiff's investment; (ii) an accounting of all fees, revenues, and profits received in connection with managing Plaintiff's investment; and (iii) an injunction against continued operation of the void advisory relationship, enjoining IAG and Smith from acting as investment advisers, soliciting investors, or managing investor capital without registration with the SEC or a valid exemption, as a legal incident of the voidness of the Limited Partnership Agreement under § 215;

F. **Punitive damages** in an amount sufficient to punish Defendants for their intentional, willful, and fraudulent conduct and to deter similar conduct in the future, **solely pursuant to Count 6 (Fraudulent Inducement)** under applicable Delaware and District of Columbia common law, and not on any federal securities claim;

**G.** Attorneys' fees and costs pursuant to Florida Statutes § 517.211(7) upon Plaintiff's prevailing on his FSIPA claims (Count 8), and attorneys' fees and costs on all other counts to the extent permitted by applicable law and fee-shifting provisions;

**H.** An order of injunctive relief restraining Defendants from dissipating, concealing, or transferring assets pending resolution of this action, including a prejudgment attachment or asset freeze pursuant to Rule 64 of the Federal Rules of Civil Procedure and the Court's inherent equitable power to preserve assets in aid of a judgment;

**I.** A declaration that the Release Agreement is void or voidable as the product of fraudulent inducement and that all mutual releases executed in connection therewith are of no force or effect; and, independently, a declaration that the Limited Partnership Agreement is void or voidable as a contract made in violation of the federal securities laws and the Investment Advisers Act; **provided that**, in any event, Section 4.2(d)(ii) of the Limited Partnership Agreement's capital recall right shall not apply to any judgment, settlement payment, or other amounts recovered by Plaintiff in this action, which do not constitute "distributions" within the meaning of the LPA;

**J.** Post-judgment interest on all sums awarded at the maximum rate permitted by applicable law from the date of judgment until paid in full; and

**K.** Such other and further relief as this Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

## CORPORATE DISCLOSURE STATEMENT

93. Pursuant to Local Civil Rule 26.1 of the United States District Court for the District of Columbia, Plaintiff Robert Berg is an individual and has no parent companies, subsidiaries, or affiliates that have outstanding securities in the hands of the public. The Alan Paul Berg Trust is a private trust with no parent companies, subsidiaries, or affiliates. No publicly held company owns ten percent or more of the stock of any party to this action.

Dated: July 5, 2026
Washington, D.C.

Respectfully submitted,

Edmund D. Cooke Jr., Esq. Bar No. 284414
Cooke Cleveland LLC
910 17th Street, N.W., Ste. 408
Washington, DC 20006
Telephone: (202) 559-8601
Email: EdmundC@CookeCleveland.com

Counsel for Plaintiff Robert Berg, individually and as Trustee of the Alan Paul Berg Trust